**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- :
RYAN O'DELL,                                             :
                                                          :
               Plaintiff,                  :   Civil Action No. 22-cv-7751
                                                          :
v.                                                        :   **COMPLAINT FOR VIOLATIONS OF**
                                                          :   **SECTIONS 14(a) AND 20(a) OF THE**
EVO PAYMENTS, INC., JAMES G. KELLY,                       :   **SECURITIES EXCHANGE ACT OF**
RAFIK R. SIDHOM, VAHE A.                                  :   **1934**
DOMBALAGIAN, MARK A. CHANCY,                              :
JOHN S. GARABEDIAN, NIKKI T.                              :   **JURY TRIAL DEMANDED**
HARLAND, DAVID W. LEEDS, LAURA M.                         :
MILLER, STACEY V. PANAYIOTOU,                             :
GREGORY S. POPE, and MATTHEW W.                           :
RAINO,                                                    :
                                                          :
               Defendants.                 :
--------------------------------------------------------- :

       Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

       1.     This is an action brought by Plaintiff against EVO Payments, Inc. ("EVO Payments

or the "Company") and the members EVO Payments' board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants") for their violations

of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in

connection with the proposed acquisition of EVO Payments by affiliates of Global Payments Inc.

("Global Payments").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on September 6, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Falcon Merger Sub Inc. ("Merger Sub"), a wholly-owned subsidiary of Global Payments, will merge with and into EVO Payments with EVO Payments surviving as a wholly-owned subsidiary of Global Payments (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 1, 2022 (the "Merger Agreement"), each EVO Payments stockholder will receive $34.00 in cash (the "Merger Consideration") for each EVO Payments share owned.

3.      As discussed below, Defendants have asked EVO Payments' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Citigroup Global Markets Inc. ("Citi") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to EVO Payments' stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants'
violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange
Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges
violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant
conducts business in or maintains operations in this District, or is an individual who is either
present in this District for jurisdictional purposes or has sufficient minimum contacts with this
District as to render the exercise of jurisdiction over Defendant by this Court permissible under
traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §
78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of EVO Payments stocks
and has held such stocks since prior to the wrongs complained of herein.

10.      Individual Defendant James G. Kelly has served as a member of the Board since
May 2018 and is the Company's Chief Executive Officer.

11.      Individual Defendant Rafik R. Sidhom has served as a member of the Board since
May 2018 and is the Chairman of the Board.

12.      Individual Defendant Vahe A. Dombalagian has served as a member of the Board
since May 2018.

13.      Individual Defendant Mark A. Chancy has served as a member of the Board since
March 2020.

14.     Individual Defendant John S. Garabedian has served as a member of the Board since May 2018.

15.     Individual Defendant Nikki T. Harland has served as a member of the Board since March 2022.

16.     Individual Defendant David W. Leeds has served as a member of the Board since July 2018.

17.     Individual Defendant Laura M. Miller has served as a member of the Board since September 2019.

18.     Individual Defendant Stacey V. Panayiotou has served as a member of the Board since August 2021.

19.     Individual Defendant Gregory S. Pope has served as a member of the Board since May 2018.

20.     Individual Defendant Matthew W. Raino has served as a member of the Board since April 2020 and previously, from May 2018 to December 2019.

21.     Defendant EVO Payments is a Delaware corporation and maintains its principal offices at 10 Glenlake Parkway, South Tower, Suite 950, Atlanta, Georgia 30328.  The Company's stock trades on the NASDAQ Global Select under the symbol "EVOP."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23.     The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.**    **The Proposed Transaction**

24.    EVO Payments operates as an integrated merchant acquirer and payment processor in the Americas and Europe. Its payment and commerce solutions consist of EMV, chip and signature enabled POS terminals, virtual POS terminals for desktops, mobile acceptance and mPOS solutions software-based POS solutions, online hosted payments, and integrated payment service provider. It also offers value added solutions, such as gateway solutions, online hosted payments page capabilities prevention and management reporting, loyalty programs, mobile-based SMS integrated payment collection services, security tokenization and encryption solutions at the point-of-sale, dynamic currency conversion, ACH, and other ancillary solutions. The Company also offers processing capabilities for specific industries and provides merchants with recurring billing, multi-currency authorization and settlement, and cross-border processing and settlement. In addition, it provides other services that enable through technical integrations with third-party providers. The company offers its services to approximately 550,000 merchants. EVO Payments was founded in 1989 and is headquartered in Atlanta, Georgia.

25.    On August 1, 2022, the Company and Global Payments announced the Proposed Transaction:

> ATLANTA--(BUSINESS WIRE)-- Global Payments Inc. (NYSE: GPN), a leading worldwide provider of payment technology and software solutions, and EVO Payments, Inc. (NASDAQ: EVOP), a leading global provider of payment technology integrations and acquiring solutions, today announced that Global Payments will acquire EVO in an all-cash transaction for $34.00 per share.
>
> The transaction will significantly increase Global Payments' target addressable markets, further enhance its leadership in integrated payments worldwide, expand its presence in new and existing faster growth geographies, and augment its B2B software and payment

solutions with the addition of accounts receivable software with broad third-party acceptance.

"The acquisition of EVO is highly complementary to our technology-enabled strategy and provides meaningful opportunities to increase scale in our business globally," said Cameron Bready, President and Chief Operating Officer, Global Payments. "Together with EVO, we are positioned to deliver an unparalleled suite of distinctive software and payment solutions to our combined 4.5 million merchant locations and more than 1,500 financial institutions worldwide."

The transaction will expand Global Payments' geographic footprint into attractive new geographies such as Poland, Germany, Chile, and upon closing, Greece, as well as enhance its scale in existing markets, including the United States, Canada, Mexico, Spain, Ireland and the United Kingdom.

The acquisition will also add leading accounts receivable automation software capabilities that complement Global Payments' existing B2B and accounts payable offerings. Further, EVO will bring an array of key technology partners and proprietary integrations, including with the most widely used ERP software providers.

"Joining EVO and Global Payments will unite highly complementary portfolios of technology-enabled products and partnerships to create an even stronger organization serving a broader customer base," added Jim Kelly, Chief Executive Officer, EVO. "Over the last decade, the EVO team has worked diligently to advance our innovative solutions, strengthen the service we provide to our bank and technology-enabled partners, and grow our global footprint. This transaction is an achievement for our company, and we believe it delivers compelling value to our shareholders and accelerates our growth opportunities."

**Transaction Details**

The transaction has been unanimously approved by each company's Board of Directors. Pursuant to the terms of the merger agreement, Global Payments will acquire the outstanding equity of EVO for $34.00 per share in cash ($4.0 billion of enterprise value for EVO). The purchase price represents a premium of approximately 24% and 40% to EVO's last closing price and to its 60-day average price, respectively, as of July 29, 2022.

Global Payments expects to finance the acquisition with cash on hand and a committed bank facility. Silver Lake will make a strategic investment of $1.5 billion in Global Payments in the form of a convertible note. In connection with the investment by Silver Lake, and subject to market conditions and other factors, Global Payments expects to enter into a call spread or other derivative transaction designed to raise the effective conversion premium of the convertible note.

The transaction, which is subject to EVO stockholder approval, regulatory approvals and other customary closing conditions, is expected to deliver $125 million of run-rate synergies and be accretive in the first year after close. The transaction is expected to close no later than the first quarter of 2023.

Certain investment funds affiliated with Madison Dearborn Partners, LLC and other EVO stockholders have entered into voting agreements pursuant to which they have agreed, among other things, to vote their shares of EVO stock in favor of the transaction, subject to certain conditions. These stockholders currently represent approximately 22% of the voting power of EVO's stock.

**Advisors**

BofA Merrill Lynch and J.P. Morgan Securities LLC are serving as financial advisors to Global Payments and have provided committed financing. Goldman, Sachs & Co., Barclays, Evercore and Greenhill & Co, Inc. have also provided financial advice to Global Payments. Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Global Payments.

Citi is serving as financial advisor to EVO and King & Spalding LLP is serving as EVO's legal advisor.

\* \* \*

26.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that EVO Payments' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**    **The Materially Incomplete and Misleading Proxy Statement**

27.     On September 6, 2022, EVO Payments filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28.     The Proxy Statement fails to provide material information concerning financial projections by EVO Payments management and relied upon by Citi in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts in May and July 2022 (the "Company Projections") and provided them to the Board and Citi with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that EVO Payments management provided to the Board and Citi. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29.    For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Adjusted Net Income Per Share, and, Unlevered After-Tax Free Cash Flows but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30.    When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

33.     With respect to Citi's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the financial metrics for the companies selected for the analysis.

34.     With respect to Citi's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

35.     With respect to Citi's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for EVO Payments; (ii) the inputs and assumptions underlying the range of perpetuity growth rates of 2.50% to 3.00%; (iii) the inputs and assumptions underlying the use of the range of discount rates of 10.25% to 11.50%; (iv) the Company's weighted average cost of capital; (v) EVO Payments' net debt and non-controlling interests in consolidated entities; (vi) the Company's investments in equity securities; and (vii) the number of fully diluted shares of EVO Payments common stock outstanding.

36.     With respect to Citi's analysis of publicly available Wall Street research analysts' one-year forward price targets, the Proxy Statement fails to disclose the analysts observed and the corresponding price targets.

37.     With respect to Citi's analysis of implied premiums in selected acquisition transactions, the Proxy Statement fails to disclose the companies reviewed and analyzed and the premia paid for the transactions.

38.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

41.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

44.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of EVO Payments within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of EVO Payments, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of EVO Payments, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of EVO Payments, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 12, 2022                    **MELWANI & CHAN LLP**

                                    By:   _/s/ Gloria Kui Melwani_
                                          Gloria Kui Melwani (GM5661)
                                          1180 Avenue of the Americas, 8th Fl.
                                          New York, NY 10036
                                          Telephone: (212) 382-4620
                                          Email: gloria@melwanichan.com

                                          _Attorneys for Plaintiff_